**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

TIBBETTS LUMBER CO., LLC,

        Plaintiff,

v.                               Case No: 8:19-CV-001275-001

AMERISURE MUTUAL INSURANCE
COMPANY,

        Defendant.

_____/

**AMENDED COMPLAINT**

    Plaintiff, Tibbetts Lumber Co., LLC ("Tibbetts" or "Plaintiff"), sues Defendant, Amerisure Mutual Insurance Company ("Amerisure" or "Defendant"), and states:

**INTRODUCTION**

    1.     Defendant is a workers' compensation insurer in the State of Florida. Defendant advertises that it is an advocate for the containment of loss for its workers' compensation insureds. Defendant represents that it has a sophisticated workers' compensation fraud program and trained personnel that help insureds minimize loss from workers' compensation fraud.

    2.     Defendant was Tibbetts' workers' compensation insurer for several years. Tibbetts obtained a workers' compensation policy from Defendant that was renewed several times (hereafter referred to, including all renewals, as the "Contract"). A true and correct copy of the Contract is attached hereto as **Exhibit** "**A**." Tibbetts paid nearly $2,000,000 to Defendant, pursuant to the terms of the Contract, in order to obtain the benefits of the Contract.

    3.     Defendant, as a workers' compensation insurer in the State of Florida, is subject to Florida's Workers' Compensation Statute, Chapter 440, Florida Statutes (the "Workers'

Compensation Statute"), which is administered by Florida's Department of Financial Services, Division of Workers' Compensation (the "Division"). Pursuant to the Workers' Compensation Statute, § 440.207, the Division shall publish a workers' compensation system guide (the "Workers' Compensation Guide"), which shall educate insurers and insureds (among others) of their duties and benefits under the Workers' Compensation Statute.

4.     Pursuant to Part One (H) of the Contract, the Contract conforms with Florida's Workers' Compensation Statute and if it does not in any way, it automatically changes to conform.

5.     Pursuant to Part One C and Part Two D of the Contract, the Workers' Compensation Statute, Fla. Stat. § 440.09(1) and § 440.20(4), and page 18 of the Workers' Compensation Guide, Defendant had a duty to provide Tibbetts with the benefit of conducting good faith investigations into workers' compensation claims to determine if (to a reasonable degree of medical certainty based on objective medical findings) the injury arose out of work performed in the course and scope of the claimant's employment with Tibbetts and was a major contributing cause of the injury (more than 50 percent). Defendant did not have the authority to accept fraudulent claims out of expediency, as the Contract does not include a "deems-expedient" clause, and even if there were such a clause, such discretion is not absolute.

6.     Defendant failed to conduct good faith investigations (or any investigation at all) into Tibbetts' employees' workers' compensation claims, and as a result, Tibbetts has suffered damages, including, but not limited to, substantially increased workers' compensation insurance premiums, lost employee resources, and ancillary expenses (including investigation costs).

7.     Subject to these unusual circumstances, Tibbetts seeks damages from Defendant for breach of contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and negligent misrepresentation.

## PARTIES, JURISDICTION, AND VENUE

8.      Tibbetts is a Florida limited liability corporation with a principal place of business at 3300 Fairfield Avenue South, St. Petersburg, FL 33712.

9.      Amerisure is a Michigan corporation with a principal address of 26777 Halsted Rd., Farmington, Michigan 48331. Amerisure's registered address in Florida is 200 E. Gaines St., Tallahassee, FL 32399.

10.     The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between the parties.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

12.     Tibbetts is a building supply company with operations throughout the State of Florida. Tibbetts employs numerous individuals in the production and sale of building supplies and materials.

13.     Pursuant to the Workers Compensation Statute, Tibbetts is obligated to secure workers' compensation insurance.

14.     Defendant is one of Florida's largest workers' compensation insurers. Defendant is aware of its duties to its workers' compensation insureds pursuant to the Workers' Compensation Statute and the Workers' Compensation Guide.

15.     Defendant created the Contract with the specific intent that it conform to the Workers' Compensation Statute and comply with the Workers' Compensation Guide.

16.     Pursuant to the Workers' Compensation Statute, Defendant has a duty to conduct good faith investigations into workers' compensation claims to determine if (to a reasonable degree

of medical certainty based on objective medical findings) the injury arose out of work performed in the course and scope of the claimant's employment and was a major contributing cause of the injury (more than 50 percent). Pursuant to the Workers' Compensation Statute, workers' compensation insurers do not have the authority to accept fraudulent workers' compensation claims because of the expediency of doing so.

17.    Pursuant to the Workers' Compensation Statute, if Defendant investigates a workers' compensation claim and determines that an alleged injury did not arise (to a reasonable degree of medical certainty based on objective medical findings) out of work performed for the employer the Defendant must deny the claim. *See* Fla. Stat. § 440.09(1) and § 440.20(4).

18.    Pursuant to the Workers' Compensation Statute, if Defendant investigates a workers' compensation claim and determines that the alleged workplace incident was not a major contributing cause of the injury (more than 50 percent), then Defendant must deny the claim. *Id.*

19.    Defendant advertises that it is an advocate for the containment of loss for its workers' compensation insureds and helps insureds fight workers' compensation fraud through a comprehensive program and highly trained and experienced team of investigators (using the latest technology and investigative techniques).

20.    When choosing a workers' compensation insurer, Tibbetts relied on Defendant's advertising.

21.    Tibbetts entered into the Contract with Defendant because of the benefits Defendant promised to confer upon Tibbetts regarding workers' compensation claims. Tibbetts entered into the Contract because the Contract either conformed to the Workers' Compensation Statute or would automatically change to conform to the Workers' Compensation Statute. *See* Part One (H) of the Contract. Tibbetts entered into the Contract knowing it did <u>not</u> have a provision allowing

4

Defendant to accept workers' compensation claims (without a good faith investigation) because of the expediency of doing so.

22.     After execution of the Contract, Tibbetts relied on Defendant to conduct good faith investigations into its employees' workers' compensation claims to determine (a) if, to a reasonable degree of medical certainty based on objective medical findings, the alleged injury arose out of work performed for Tibbetts, and (b) that the alleged incident was a major contributing cause of the injury (more than 50 percent).

23.     Tibbetts' only responsibility regarding workers' compensation claims was to pay premiums, report claims to Defendant, and then assist as requested.

24.     Tibbetts trusted that if a workers' compensation claim was not denied that Defendant had investigated the claim and determined that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injury arose out of work performed for Tibbetts, and (b) that the alleged incident was a major contributing cause of the injury (more than 50 percent).

25.     Tibbetts fulfilled all of its duties and obligations pursuant to the Contract. Tibbetts paid all premiums owing under the Contract.

26.     On September 25, 2015, a Tibbetts outside sales employee ("Claimant") allegedly injured himself unloading a lightweight metal rod. Tibbetts reported Claimant's alleged injury (pain in his lower right abdomen) to Defendant (the "Workers' Compensation Claim").[1]

---

[1] The name of the Claimant is not being used in this Complaint for privacy and confidentiality purposes. Amerisure is aware of who the Claimant is.

27.     Tibbetts provided Defendant with the information Defendant requested related to the Workers' Compensation Claim, including an Injured Employee Report and a First Report of Injury or Illness Form. Tibbetts provided Defendant with access to any of its employees.

28.     The facts surrounding the Workers' Compensation Claim were suspicious because Claimant was extremely obese, had a history of hernias, and alleged to have been injured (with no witnesses present) picking up a bar that weighed approximately two (2) lbs. Tibbetts shared this concern with Defendant.

29.     Pursuant to the Workers' Compensation Statute, Defendant had the right to demand Claimant's medical records and question Claimant's medical providers. *See* Fla. Stat. § 440.13(4).

30.     Tibbetts relied on Defendant to investigate the Workers' Compensation Claim and determine whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts, and (b) that the alleged September 25, 2015 incident was a major contributing cause of the injury (more than 50 percent).

31.     Defendant did not conduct a good faith investigation into the Workers' Compensation Claim. Defendant did not question Claimant regarding his prior medical history predating the alleged date of injury, and never obtained any of Claimant's medical records predating the alleged date of injury.

32.     Defendant accepted the Workers' Compensation Claim without determining whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts, or (b) that the alleged September 25, 2015 incident was a major contributing cause of the injury (more than 50 percent).

6

33.    Defendant accepted the Workers' Compensation Claim without investigating whether Claimant's alleged injury predated the alleged date of injury.

34.    Despite having knowledge that Claimant was extremely obese and had a history of extreme complications from prior hernia surgeries, Defendant referred Claimant to Dr. Kevin J. Hirsch to perform hernia repair surgery. Dr. Hirsch was chosen specifically because he was inexpensive as a result of his willingness to do outpatient surgery.

35.    Without ever having reviewed any medical records or images pre-dating the alleged date of injury, Dr. Hirsch determined that Claimant had three hernias, at least one of which predated the alleged date of injury. Dr. Hirsch never questioned Claimant regarding his medical conditions predating the alleged date of injury. Dr. Hirsch never reviewed any of Claimant's medical records predating the date of alleged injury. Dr. Hirsch never questioned any of Claimant's medical providers predating or post-dating the alleged date of injury.

36.    Defendant entered into a contract with Dr. Hirsch to treat all three of Claimant's hernias. And despite hernia surgery posing a health risk to Claimant because of his extreme obesity and history of severe complications from surgeries, Dr. Hirsch performed outpatient hernia repair surgery on Claimant on June 23, 2016 (the "Hernia Surgery"). Claimant was allegedly always uncomfortable with Dr. Hirsch and eventually demanded his termination.

37.    Claimant immediately suffered extreme complications from the Hernia Surgery, which persist to this day. Claimant's complications and medical treatment resulting therefrom have cost several hundreds of thousands of dollars. On average, Claimant took five hours off per week since June 2016 (most of which was paid time off) to rehabilitate his medical issues related to the Hernia Surgery. Claimant had another failed hernia repair surgery on the same hernias. Claimant

even obtained weight loss treatment to improve his condition so that he could be eligible for a third surgery but was never able to lose sufficient weight.

38.     As Claimant continued to suffer greater and greater problems associated with the Hernia Surgery, Tibbetts' suspicions regarding the validity of the Workers' Compensation Claim persisted. Tibbetts shared these concerns with Defendant, but was ignored. Additionally, Tibbetts became frustrated with Defendant regarding another workers' compensation claim that cost tens of thousands of dollars that turned out to be a wood splinter the workers' compensation claimant sustained at home.[2] The treating physician for this workers' compensation claim even reported that he did not believe the alleged injury occurred at work.

39.     In September 2017, Defendant suggested that Tibbetts should pay for Claimant to have a weight loss surgery so that he could become medically fit to have another hernia surgery. Additionally, on September 19, 2017, Claimant filed a new workers' compensation claim, which was accepted, for an alleged twisted ankle. Tibbetts was suspicious of this claim as well because a GPS device on Claimant's work truck established that he was at home (and had been for several hours) at the time of the alleged injury.

40.     As a result of these experiences, Tibbetts started to doubt whether Defendant was conducting good faith investigations into workers' compensation claims to determine if (to a reasonable degree of medical certainty based on objective medical findings) the injuries arose out of work performed for Tibbetts, and were a major contributing cause of the injuries (more than 50 percent).

---

[2] The name of this claimant is not being used for privacy and confidentiality purposes. Amerisure is aware of who this second referenced workers' compensation claimant is. If Amerisure alleges ignorance regarding the identity of this claimant, Tibbetts will voluntarily provide the name of this claimant.

41.     Tibbetts demanded that Defendant reopen its investigation into the validity of the Workers' Compensation Claim.

42.     Defendant did not reopen the investigation into the Workers' Compensation Claim or request an independent medical examination of the Workers' Compensation Claimant, which it could have done pursuant to Fla. Stat. § 440.13(5). Instead, Defendant sent one short letter to Dr. Hirsch but did not get a response or obtain any medical records. An Amerisure representative admitted during this process that Defendant never investigated the Workers' Compensation Claim and suggested that Tibbetts' outside legal counsel investigate because Defendant would not.

43.     As a result of Defendant's failure to investigate, Tibbetts began its own investigation into the Workers' Compensation Claim in May 2018 and engaged counsel to conduct the investigation.

44.     Tibbetts requested and was given Defendant's file regarding the Workers' Compensation Claim (the "Amerisure Workers' Compensation Claim File"). Using information from Amerisure Workers' Compensation Claim File, Tibbetts subpoenaed Claimant's medical records pre-dating the alleged date of injury. Tibbetts obtained medical records showing that the Claimant's hernias were pre-existing on the date of the alleged injury. Tibbetts' investigation cost tens of thousands of dollars.

45.     In June 2018, regarding a different Tibbetts' workers' compensation claimant with an alleged back injury, Tibbetts requested that Defendant investigate and obtain pre-injury medical records. In response, Defendant claimed it could not obtain pre-injury medical records.[3]

---

[3] The name of this claimant is not being used for privacy and confidentiality purposes. Amerisure is aware of who this third referenced workers' compensation claimant is. If Amerisure alleges ignorance regarding the identity of this claimant, Tibbetts will voluntarily provide the name of this claimant.

46.     In July 2018 a conference call between Tibbetts and Defendant was arranged to discuss the Workers' Compensation Claim. Tibbetts shared its investigation results and some of the medical records it had obtained. During this call, Defendant admitted that it did not have any of Claimant's medical records pre-dating his alleged date of injury.

47.     As a result of the July 2018 call, Defendant engaged Florida counsel to perform an investigation into the Workers' Compensation Claim.

48.     Using the medical records provided to Defendant by Tibbetts, such counsel conducted an investigation and determined that the Workers' Compensation Claim was a fraudulent claim that should have been denied.

49.     On December 5, 2018, Defendant filed a Motion For Summary Final Order That Claims For Benefits Are Barred For Misrepresentation Pursuant To Sections 440.105 and 440.09, Florida Statutes (the "Motion For Summary Final Order"). In the Motion For Summary Final Order, Defendant asserted that "it is undisputed that the Claimant's hernias pre-existed the alleged date of accident" and requested entry of a summary final order concluding that all contested and outstanding requests for benefits are barred. Attached to the Motion For Summary Final Order as exhibits were medical records provided to Defendant by Tibbetts and a declaration from Dr. Hirsch stating that Claimant's September 25, 2015 alleged injury was not a major contributing cause of Claimant's hernias.

50.     The Motion For Summary Final Order was summarily dismissed on December 7, 2018 based on lack of jurisdiction because there was no petition for benefits pending.

51.     Defendant then denied the Workers' Compensation Claim. Claimant has not contested the denial.

52.     As a result of Defendant's failure to investigate the Workers' Compensation Claim until July 2018, Tibbetts' workers' compensation insurance premiums skyrocketed because of the impact the Workers' Compensation Claim had on Tibbetts' workers' compensation experience modifier. Additionally, Tibbetts had to pay for the costs associated with performing its own investigation, and paid Claimant for approximately five hours of work missed per week after the date of alleged injury until the date of his termination (between September 25, 2015 and July 31, 2018).

53.     Upon information and belief, it is Defendant's policy not to request medical records predating the alleged dates of injury.

54.     In late 2018, Defendant and Tibbetts ended their contractual relationship. There were, however, multiple workers' compensation claims that Defendant continued to be responsible for. In particular, there was a workers' compensation claim related to an employee's knee injury (the "Knee Injury Claim").[4]

55.     In March 2019, it was discovered by Defendant and Tibbetts that the Knee Injury Claim claimant was dishonest regarding some aspects of the workers' compensation claim. As a result, and because the Knee Injury Claim claimant is extremely obese, Tibbetts requested to see Defendant's workers' compensation file to determine (a) whether Defendant had obtained any medical records pre-dating the date of the alleged injury, and (b) whether medical records indicated there was a relevant pre-existing injury. Defendant refused however, to allow Tibbetts to

---

[4] The name of this claimant is not being used for privacy and confidentiality purposes. Amerisure is aware of who this fourth referenced workers' compensation claimant is. If Amerisure alleges ignorance regarding the identity of this claimant, Tibbetts will voluntarily provide the name of this claimant.

investigate. Defendant refused to produce any medical records. Defendant blocked Tibbetts' investigation.

## COUNT ONE
## BREACH OF CONTRACT

56. Tibbetts realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57. The written Contract between Tibbetts and Defendant is attached. Defendant created the Contract with the specific intent that it conform completely to the Workers' Compensation Statute and comply with the Workers' Compensation Guide. The Contract does conform with the Workers Compensation Statute. *See* Part One (H) of the Contract.

58. The duties Defendant owed to Tibbetts pursuant to the Workers' Compensation Statute and Workers Compensation Guide were incorporated into the Contract pursuant to the terms of the Contract. *Id.*

59. Tibbetts fulfilled all of its obligations under the Contract. Tibbetts paid all premiums owed.

60. Pursuant to the Workers' Compensation Statute, and thus the Contract (CITE), Defendant has a duty to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine if (to a reasonable degree of medical certainty based on objective medical findings) the injury arose out of work performed in the course and scope of the claimant's employment, and was a major contributing cause of the injury (more than 50 percent). *See* Fla. Stat. § 440.09(1) and § 440.20(4); page 18 of the Workers' Compensation Guide; and Part One C, Part One (H), and Part Two D of the Contract.

61. Pursuant to the Workers' Compensation Statute, and thus the Contract, if Defendant investigated a workers' compensation claim and determined that an alleged injury did not arise (to

a reasonable degree of medical certainty based on objective medical findings) out of work performed for Tibbetts, the Defendant had to deny the claim. *Id.*

62.     Defendant did not have the statutory or contractual authority to accept fraudulent claims out of expediency. *Id.*

63.     Pursuant to the Workers' Compensation Statute, and thus the Contract, if Defendant investigated a workers' compensation claim and determined that the alleged workplace incident was not a major contributing cause of the injury (more than 50 percent), then Defendant **must** deny the claim. *Id.*

64.     Tibbetts entered into the Contract with Defendant because of the benefits Defendant promised to confer upon Tibbetts regarding workers' compensation claims. Tibbetts entered into the Contract because the Contract either conformed to the Workers' Compensation Statute or would automatically change to conform to the Workers' Compensation Statute. *See* Part One (H) of the Contract.

65.     Tibbetts relied on Defendant to fulfill its obligations under the Contract and Workers Compensation Statute to conduct good faith investigations into its employees' workers' compensation claims to determine (a) if, to a reasonable degree of medical certainty based on objective medical findings, the alleged injury arose out of work performed for Tibbetts, and (b) that the alleged incident was a  major contributing cause of the injury (more than 50 percent).

66.     Tibbetts relied on the fact that if a workers' compensation claim was not denied by Defendant that Defendant had investigated the claim and determined that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injury arose out of work performed for Tibbetts, and (b) that the alleged incident was a  major contributing cause of the injury (more than 50 percent).

67.     Tibbetts relied on Defendant to investigate the Workers' Compensation Claim and determine whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts, and (b) that the alleged September 25, 2015 incident was a major contributing cause of the injury (more than 50 percent).

68.     Defendant did not conduct a good faith investigation into the Workers' Compensation Claim. Defendant did not question Claimant regarding his prior medical history predating the alleged date of injury and never obtained any of Claimant's medical records predating the alleged date of injury.

69.     Defendant accepted the Workers' Compensation Claim without determining whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts or (b) that the alleged September 25, 2015 incident was a major contributing cause of the injury (more than 50 percent).

70.     Defendant accepted the Workers' Compensation Claim without investigating whether Claimant's alleged injury predated the alleged date of injury.

71.     Defendant admitted it failed to investigate the Workers' Compensation Claim.

72.     Because Defendant failed to investigate, Tibbetts investigated the Workers' Compensation Claim. Tibbetts obtained medical records showing that Claimant's hernias were pre-existing on the date of alleged injury.

73.     Based on Tibbetts' investigation into the Workers' Compensation Claim, Defendant determined that the Workers' Compensation Claim was a fraudulent claim and denied the Workers' Compensation Claim. Claimant has not contested the denial.

14

74. Defendant did not conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

75. Defendant's actions and inactions constitute a breach of the Contract.

76. As a result of Defendant's material breach of the Contract, Tibbetts has suffered damages.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY

77. Tibbetts realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

78. Upon execution of the Contract, Tibbetts and Defendant entered into an insurer and insured relationship and Defendant became Tibbetts' fiduciary.

79. Defendant created the Contract with the specific intent that it conform completely to the Workers' Compensation Statute and comply with the Workers' Compensation Guide. The Contract does conform with the Workers' Compensation Statute. *See* Part One (H) of the Contract.

80. The duties Defendant owed to Tibbetts pursuant to the Workers' Compensation Statute and Workers Compensation Guide were incorporated into the Contract pursuant to the terms of the Contract. *Id.*

81. Pursuant to the Workers' Compensation Statute, and thus the Contract, Defendant has a duty to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine if (to a reasonable degree of medical certainty based on objective medical findings) the injury arose out of work performed in the course and scope of the claimant's

15

employment, and was a major contributing cause of the injury (more than 50 percent). *See* Fla. Stat. § 440.09(1) and § 440.20(4); page 18 of the Workers' Compensation Guide; and Part One C, Part One (H), and Part Two D of the Contract.

82.     Defendant did not have the statutory or contractual authority to accept fraudulent claims out of expediency. *Id.*

83.     Pursuant to the Workers' Compensation Statute, and thus the Contract, if Defendant investigated a workers' compensation claim and determined that an alleged injury did not arise (to a reasonable degree of medical certainty based on objective medical findings) out of work performed for Tibbetts, the Defendant had to deny the claim. *Id.*

84.     Pursuant to the Workers' Compensation Statute, and thus the Contract, if Defendant investigated a workers' compensation claim and determined that the alleged workplace incident was not a major contributing cause of the injury (more than 50 percent), then Defendant had to deny the claim. *Id.*

85.     Tibbetts entered into the Contract with Defendant because of the benefits Defendant promised to confer upon Tibbetts regarding workers' compensation claims. Tibbetts entered into the Contract because the Contract either conformed to the Workers' Compensation Statute or would automatically change to conform to the Workers' Compensation Statute.

86.     Upon execution of the Contract, Tibbetts relied on Defendant to conduct good faith investigations into its employees' workers' compensation claims to determine (a) if, to a reasonable degree of medical certainty based on objective medical findings, the alleged injury arose out of work performed for Tibbetts, and (b) that the alleged incident was a major contributing cause of the injury (more than 50 percent).

16

87.     Tibbetts relied on the fact that if a workers' compensation claim was not denied by Defendant that Defendant had investigated the claim and determined that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injury arose out of work performed for Tibbetts, and (b) that the alleged incident was a  major contributing cause of the injury (more than 50 percent).

88.     Tibbetts relied on Defendant to investigate the Workers' Compensation Claim and determine whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts, and (b) that the alleged September 25, 2015 incident was a  major contributing cause of the injury (more than 50 percent).

89.     Defendant did not conduct a good faith investigation into the Workers' Compensation Claim. Defendant did not question Claimant regarding his prior medical history predating the alleged date of injury and never obtained any of Claimant's medical records predating the alleged date of injury.

90.     Defendant accepted the Workers' Compensation Claim without determining whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts or (b) that the alleged September 25, 2015 incident was a  major contributing cause of the injury (more than 50 percent).

91.     Defendant accepted the Workers' Compensation Claim without investigating whether Claimant's alleged injury predated the alleged date of injury.

92.     Defendant admitted it failed to investigate the Workers' Compensation Claim.

17

93.     Because Defendant failed to investigate, Tibbetts investigated the Workers' Compensation Claim. Tibbetts obtained medical records showing that Claimant's hernias were pre-existing on the date of alleged injury.

94.     Based on Tibbetts' investigation into the Workers' Compensation Claim, Defendnant determined that the Workers' Compensation Claim was a fraudulent claim and denied the Workers' Compensation Claim. Claimant has not contested the denial.

95.     Defendant did not conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

96.     Defendants actions and inactions constitute a breach of a fiduciary duty Defendant owed to Tibbetts.

97.     Defendant's breach of its fiduciary duty to Tibbetts is the proximate cause of Tibbetts' damages.

## COUNT THREE
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

98.     Tibbetts realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

99.     The written Contract between Tibbetts and Defendant is attached. Defendant created the Contract with the specific intent that it conform completely to the Workers' Compensation Statute and comply with the Workers' Compensation Guide. The Contract does conform with the Workers Compensation Statute. *See* Part One (H) of the Contract.

#68272248_v2

100.     The duties Defendant owed to Tibbetts pursuant to the Workers' Compensation Statute and Workers Compensation Guide were incorporated into the Contract pursuant to the terms of the Contract. *Id.*

101.     Pursuant to the Workers' Compensation Statute, and thus the Contract, Defendant has a duty to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine if (to a reasonable degree of medical certainty based on objective medical findings) the injury arose out of work performed in the course and scope of the claimant's employment and was a major contributing cause of the injury (more than 50 percent). Defendant did not have the authority to accept fraudulent claims out of expediency. *See* Fla. Stat. § 440.09(1) and § 440.20(4); page 18 of the Workers' Compensation Guide; and Part One C, Part One (H), and Part Two D of the Contract.

102.     Pursuant to the Workers' Compensation Statute, and thus the Contract, if Defendant investigated a workers' compensation claim and determined that an alleged injury did not arise (to a reasonable degree of medical certainty based on objective medical findings) out of work performed for Tibbetts the Defendant had to deny the claim. Defendant did not have the authority to accept fraudulent claims out of expediency. *Id.*

103.     Pursuant to the Workers' Compensation Statute, and thus the Contract, if Defendant investigated a workers' compensation claim and determined that the alleged workplace incident was not a major contributing cause of the injury (more than 50 percent) then Defendant had to deny the claim. Defendant did not have the authority to accept fraudulent claims out of expediency. *Id.*

104.     Tibbetts entered into the Contract with Defendant because of the benefits Defendant promised to confer upon Tibbetts regarding workers' compensation claims. Tibbetts entered into

the Contract because the Contract either conformed to the Workers' Compensation Statute or would automatically change to conform to the Workers' Compensation Statute.

105.    Upon execution of the Contract, Tibbetts relied on Defendant to conduct good faith investigations into its employees' workers' compensation claims to determine (a) if, to a reasonable degree of medical certainty based on objective medical findings, the alleged injury arose out of work performed for Tibbetts and (b) that the alleged incident was a major contributing cause of the injury (more than 50 percent).

106.    Tibbetts trusted that if a workers' compensation claim was not denied by Defendant that Defendant had investigated the claim and determined that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injury arose out of work performed for Tibbetts and (b) that the alleged incident was a major contributing cause of the injury (more than 50 percent). Defendant did not have the authority to accept fraudulent claims out of expediency.

107.    Tibbetts relied on Defendant to investigate the Workers' Compensation Claim and determine whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts, and (b) that the alleged September 25, 2015 incident was a major contributing cause of the injury (more than 50 percent). Defendant did not have the authority to accept fraudulent claims out of expediency.

108.    Defendant did not conduct a good faith investigation into the Workers' Compensation Claim. Defendant did not question Claimant regarding his prior medical history predating the alleged date of injury and never obtained any of Claimant's medical records predating the alleged date of injury.

109.    Defendant accepted the Workers' Compensation Claim without determining whether (a) to a reasonable degree of medical certainty based on objective medical findings the Workers' Compensation Claim alleged injury arose out of work performed for Tibbetts, or (b) that the alleged September 25, 2015 incident was a  major contributing cause of the injury (more than 50 percent).

110.    Defendant accepted the Workers' Compensation Claim without investigating whether Claimant's alleged injury predated the alleged date of injury.

111.    Defendant admitted it failed to investigate the Workers' Compensation Claim.

112.    Because Defendant failed to investigate, Tibbetts investigated. Tibbetts obtained medical records showing that Claimant's hernias were pre-existing on the date of alleged injury.

113.    Based on Tibbetts' investigation into the Workers' Compensation Claim, Defendant determined that the Workers' Compensation Claim was a fraudulent claim and denied the Workers' Compensation Claim. Claimant has not contested the denial.

114.    Upon information and belief, Defendant did not conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

115.    Defendant now contends that it owes no benefits to Tibbetts under the Contract. Specifically, Defendant contends that it was not contractually obligated to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries

arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

116.    Tibbetts and Defendant have different interpretations of the Contract. Specifically, Tibbetts and Defendant have different opinions on whether Defendant was contractually obligated to conduct good faith investigations into Tibbetts' employees' workers' compensation claims or could accept fraudulent claims out of expediency.

117.    As a result of these different interpretations, the Contract may be ambiguous about whether Defendant was contractually obligated to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

118.    Through conscious and deliberate acts, Defendant failed or refused to discharge contractual responsibilities, unfairly frustrating the Contract's purpose and disappointing Tibbetts' expectations of what consideration it would receive in exchange for the premium payments made.

119.    Defendant's deliberate failure to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent) deprived Tibbetts of the Contract's benefits and as a result Tibbets has suffered damages.

## COUNT FOUR
## <u>NEGLIGENT MISREPRESENTATION</u>

120.    Tibbetts realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

121.    Defendant represents that its actions and practices conform with the Workers' Compensation Statute and Workers' Compensation Guide. *See* Part One (H) of the Contract.

122.    Defendant represents that it is an advocate for the containment of loss for its workers' compensation insureds and helps insureds fight workers' compensation fraud through a comprehensive program and highly trained and experienced team of investigators (using the latest technology and investigative techniques).

123.    Defendant represented to Tibbetts that it would conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent). Defendant represented that it would not accept a fraudulent claim out of expediency.

124.    When choosing a workers' compensation insurer, Tibbetts justifiably relied on Defendant's representations. Defendant intended for Tibbetts to rely on its representations. Defendant made these representations negligently believing that it had no obligation to conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

#68272248_v2

125.    Defendant did not conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

126.    Tibbetts suffered damages because Defendant did not conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent).

127.    If Tibbetts knew Defendant would not conduct good faith investigations into Tibbetts' employees' workers' compensation claims to determine that (a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent) it would not have entered into the Contract. If Tibbetts knew Defendant planned on accepting fraudulent workers' compensation claims out of expediency it would not have entered into the Contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Tibbetts prays that this Court enter the following relief:

A.    Judgment in favor of Tibbetts and against Amerisure on all claims;

B.    Award Tibbetts the damages it suffered as a result of Amerisure's failure to perform workers' compensation claim investigations in good faith;

C.    Attorneys' fees pursuant to Fla. Stat. § 627.428; and

#68272248_v2

D.      Award Tibbetts such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Tibbetts hereby demands a trial by jury on all issues triable by a jury.

Dated:  June 17, 2019.                          Respectfully Submitted,

                                                HOLLAND & KNIGHT LLP

                                                */s/ David J. Lisko*
                                                David Lisko
                                                Florida Bar No. 0092841
                                                david.lisko@hklaw.com
                                                Jason Baruch
                                                Florida Bar No. 10280
                                                Jason.baruch@hklaw.com
                                                P. O. Box 1288
                                                Tampa FL 33601-1288
                                                Telephone: 813-227-8500
                                                Facsimile: 813-229-0134
                                                Secondary email address:
                                                joann.colon@hklaw.com

                                                *Trial Counsel For Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June, 2019, I presented the foregoing to the

Clerk of Court for filing and uploading to the CM/ECF system. I further certify that the foregoing

document is being served this day to all counsel of record via transmission of Notice of Electronic

Filing generated by CM/ECF.

                                                /s/ David J. Lisko
                                                Attorney