## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

TIBBETTS LUMBER CO., LLC

      Plaintiff,

                                      CASE NO.: 8:19-cv-01275-MSS-AAS

vs.

AMERISURE INSURANCE COMPANY,

      Defendant.

_____/

## AMERISURE INSURANCE COMPANY'S MOTION TO DISMISS

**COMES NOW**, Defendant, AMERISURE INSURANCE COMPANY ("AMERISURE"), by and through its undersigned counsel and pursuant F.R.C.P. 12(b)(6), and hereby moves this Court for entry of an Order dismissing Plaintiff's, TIBBETTS LUMBER CO., LLC ("TIBBETTS"), Amended Complaint [D.E. 10], and as grounds therefore states:

## INTRODUCTION & BACKGROUND

1.     This dispute arises out of TIBBETTS' own employees who allegedly submitted fraudulent workers' compensation claims to AMERISURE.

2.     TIBBETTS obtained workers compensation insurance from AMERISURE, and TIBBETTS now sues AMERISURE for settling the allegedly fraudulent claims. [D.E. 10 at ¶¶2, 5].

3.      TIBBETTS' entire Amended Complaint must be dismissed, with prejudice, because TIBBETTS' cannot state a cause of action for breach of contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing or for negligent misrepresentation.

4.      TIBBETTS' Amended Complaint specifically contends that AMERISURE "had a duty to provide Tibbetts with the benefit of conducting good faith investigations into workers' compensation claims to determine if…the injury arose out of work performed in the course and scope of the claimant's employment with Tibbetts and was a major contributing cause of the injury."   [D.E. 10 at ¶ 5]. It further alleges that AMERISURE "failed to conduct good faith investigations (or any investigation at all) into Tibbetts' employees' workers' compensation claims" and that it "did not have the authority to accept fraudulent claims out of expediency" by settling claims from TIBBETTS' employees that should have been denied. [D.E. 10 at ¶¶ 5, 6].

5.      TIBBETTS lists its damages as the increased cost of its insurance premiums, lost employee resources and related administrative costs. [D.E. 10 at ¶¶ 6-7, 75-76].

6.      Counts One, Two and Three of TIBBETTS' Amended Complaint are nothing more than improper attempts to secure extra-contractual (bad faith) damages. The Policies do not provide for increased costs of premiums or related expenses, thus the damages sought by the complaint are extra-contractual.

7.      Florida does not recognize extra-contractual claims against workers compensation insurers and in fact expressly prohibits them, TIBBETTS cannot sue for breach of contract, and Florida does not recognize a cause of action for paying Workers Compensation claims. Counts One, Two and Three of the Amended Complaint should be dismissed with prejudice.

8.      Count Four of TIBBETTS' Amended Complaint claims negligent misrepresentation, not within the policy, but pursuant to a pre-suit advertisement. However, TIBBETTS does not and cannot state a claim for negligent misrepresentation, as Florida does not

recognize a cause of action against an insurer for extra-contractual advertisements. Moreover, the crux of TIBBETTS' claim is that the advertisement somehow overrode the Policies' terms, which confer the right to settle clearly upon AMERISURE.

9.     Because Florida does not recognize a cause of action against an insurer for exercising its contractual right to settle claim, TIBBETS fails to state a cause of action for negligent misrepresentation and, as such, Count Four should be dismissed with prejudice.

**WHEREFORE**, AMERISURE respectfully requests that this Court enter an Order dismissing TIBBETTS' Amended Complaint, with prejudice, as to the four counts alleged, and granting any other relief the Court deems just and proper.

## MEMORANDUM OF LAW

## I.     MOTION TO DISMISS STANDARD

A party may move to dismiss a complaint "for failure to state a claim upon which relief can be granted". F.R.C.P. 12(b)(6). A complaint must set forth sufficient facts to show that relief is plausible on its face. *Bell Atl. Co. v. Twombly*, 500 U.S. 544, 570 (2007). For a complaint to be dismissed under Rule 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). When, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action, dismissal of the complaint is warranted. *Marshall County Bd. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993); *DirecTV, Inc. v. Cardona,* 275 F.Supp.2d 1357, 1361 (M.D. Fla. 2003). Dismissal is likewise appropriate where a court cannot "identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.,* 253 F.3d 678, 684 (11th Cir. 2001). Furthermore, where it appears that no amendment could cure defects in a complaint and have it state a claim upon which

relief could be granted, dismissal of the complaint with prejudice is not an abuse of the district court's discretion.[1]

As discussed in the sections to follow, all of TIBBETTS' claims in this case suffer from fundamental defects. No amendment to the Amended Complaint can, for example, eliminate the fact that Florida's Workers' Compensation Statute bars bad faith claims. Therefore, each count raised by TIBBETTS should be dismissed with prejudice.

## II.   ARGUMENT

We address AMERISURE's basis for dismissal of TIBBETTS' Amended Complaint by examining each of the four counts in the sections to follow.

### A.   Breach of Fiduciary Duty & Breach of Implied Covenant of Good Faith and Fair Dealing

Florida law does not recognize a cause of action for first-party common law bad faith, and this includes actions styled as a breach of the insurer's fiduciary duty and a breach of the implied covenant of good faith and fair dealing. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012).  In *Chalfonte*, the Florida Supreme Court held that a claim for a breach of the implied warranty of good faith and fair dealing is actually a bad faith claim and must be brought under Fla. Stat. § 624.155. *Chalfonte*, 94 So. 3d at 549–550. Since the decision in *Chalfonte*, District Courts have extended its holding to claims involving breach of fiduciary duty. *See Gov't Employees Ins. Co. v. Prushansky*, 2012 WL 6103220, at *6–7 (S.D. Fla. Dec. 7, 2012); *Murankus v. State Farm Mut. Auto. Ins. Co.*, Case No 13–cv–14114–Graham (S.D. Fla. May 10, 2013). Accordingly, TIBBETTS claims for breach of fiduciary duty and for breach of implied

---

[1] *See Feinberg v. Leach*, 243 F.2d 64, 68 (5th Cir. 1957)(holding that district court did not abuse its discretion by dismissing the complaint with prejudice where the plaintiff had tried twice to state a claim and it appeared that no amendment could cure its defect and state a claims); *Havas v. Thornton*, 609 F.2d 372 (9th Cir.1979)(holding that trial court did not err in dismissing the complaint without leave to amend when it was clear that leave to amend the complaint would have served no purpose since the acts complained of could not constitute a claim for relief).

covenant of good faith and fair dealing in the context of insurance are actually bad faith claims which must be brought under Section 624.155, Florida Statutes.[2]

## B. **Breach of Contract**

The only contract between TIBBETTS and AMERISURE is the Policy of Workers Compensation Insurance. [D.E. 10 at ¶¶ 2, 52]. In Florida, workers compensation is "purely a creature of statute" in which "all rights and liabilities under the system are established by chapter 440, Florida Statutes."[3] *Bend v. Shamrock*, 59 So.3d 153, 156 (Fla. 1st DCA 2011). TIBBETTS claims that, under the Policy and workers compensation statute, AMERISURE promised to investigate and had a duty to conform to Florida's workers compensation laws. [D.E. 10 at ¶¶ 57-58, 60]. TIBBETTS claims that AMERISURE breached the insurance policy by not conducting good faith investigations into TIBBETTS' employees workers' compensation claims to determine that "(a) to a reasonable degree of medical certainty based on objective medical findings the alleged injuries arose out of work performed for Tibbetts, and (b) that the alleged incidents were major contributing causes of the injuries (more than 50 percent)." [D.E. 10 at ¶74]. The Amended Complaint further alleges that, after AMERISURE "accepted the [fraudulent] Workers' Compensation Claim without investigating whether Claimant's alleged injury predated the alleged date of injury[,]" TIBBETTS investigated the Workers' Compensation Claim and "obtained

---

[2] In the *Chalfonte* case, the first question certified from the Eleventh Circuit was "Does Florida law recognize a claim for breach of the implied warranty of good faith and fair dealing by an insured against its insurer based on the insurer's failure to investigate and assess the insured's claim within a reasonable period of time?" *Chalfonte*, 94 So. 3d at 545. Florida's Supreme Court answered "no." *Id.* at 549. In answering the question, Florida's Supreme Court reaffirmed that Florida does not recognize an action for first-party common law bad faith either. *Id.* at 547 ("Based on this case law and legislative history, it is clear that there is no common law first-party bad-faith action in Florida."). Instead, Florida's Supreme Court said those sorts of first-party actions can only be brought as statutory actions pursuant to Florida Statute § 624.155. *Id.* at 549 ("For the reasons discussed above, the Court answers the first certified question in the negative and concludes that such first-party claims are actually statutory bad-faith claims that must be brought under section 624.155 of the Florida Statutes.").

[3] In Florida, contested workers' compensation claims are resolved by judges of compensation claims in proceedings to which the insured/employer is party. The "...JCCs have exclusive subject matter jurisdiction over disputed workers' compensation claim matters...". *Hack v. Norris Drywall/Amerisure Insurance Company*, 46 So.3d 1137 (Fla. 1st DCA 2010); *see also* Section 440.33, Fla. Stat.

medical records showing that Claimant's hernias were pre-existing on the date of the alleged injury." [D.E. 10 at ¶¶ 70, 72]. As a result of AMERISURE's alleged "actions and inactions[,]" TIBBETTS' claims that AMERISURE breached the Policy and caused it to suffer damages. [D.E. 10 at ¶¶ 75-76]. TIBBETTS seeks compensation for the resulting premium increase for workers compensation insurance and related fees. [D.E. 10 at ¶52].

TIBBETTS' breach of contract claim cannot stand for the following reasons:

i.   TIBBETTS does not seek insurance benefits or money due under the terms of the policy (contract), and the Workers' Compensation Statute does not provide a private right to enforce statutory obligations to investigate;

ii.  Florida's Workers Compensation Statute prohibits bad faith cases against workers compensation insurers;

iii. Even if bad faith claims against workers compensation carriers were not prohibited, TIBBETTS cannot obtain a judgment for breach of contract which is a prerequisite for a first party bad faith claim;

iv.  Even if TIBBETTS sought benefits under the policy, obtained a judgment for breach of contract and was not barred by Florida's Workers Compensation Statute from bringing a bad faith claim, TIBBETTS must comply with Florida's Civil Remedy Statute and has failed to do so;

v.   Florida Does not recognize a cause of action for paying claims.

Each of these are separately addressed in detail, below.

**i.   This is Not a Claim Under the Policy (Contract)**

Workers compensation policies benefit injured workers, not employers such as TIBBETTS. Still, TIBBETTS' brought the claim for breach of contract premised on AMERISURE's insurance Policy and renewal contracts, alleging that TIBBETTS' entered into

the contract because of the "benefits [AMERISURE] promised to confer upon Tibbetts regarding workers' compensation claims." [D.E. 10, at ¶¶ 57, 64].  However, TIBBETTS fails to cite to a single express duty from the contract AMERISURE supposedly breached.  TIBBETTS seeks damages not under the policy's benefits, but rather a return of premiums and related expenses which are clearly extra-contractual claims.

Moreover, while TIBBETTS claims that AMERISURE failed to conduct a good faith investigation into TIBBETTS' employees' workers' compensation claims, Florida recognizes no private right of enforcement for a failure to investigate. *See generally Aguilera v. InServices, Inc.*, 905 So. 2d 84 (Fla. 2005).  Florida's Financial Services Commission, in consultation with the Department of Financial Services, have administrative rules in place which provide guidelines to carriers, self-insurers, and employers to indicate behavior that may be construed as questionable claims-handling techniques, questionable patterns of claims, repeated unreasonably controverted claims, or poor payment practices. *See* Fla. Stat. § 440.20(15)(f); *See also* Fla. Admin. Code R. 69L-24.001 to 69L-24.007.  But neither a claimant nor, as here, an insured can enforce these rules.

The lack of a valid breach of contract action is fatal to any extra-contractual, or "bad faith," action.  Before a bad faith claim can accrue, there must be a determination that the insurer breached the insurance contract by failing to pay what was owed when it was owed and a determination of extent of damages for the breach. *See North Pointe Ins. Co. v. Tomas*, 999 So. 2d 728, 729 (Fla. 3d DCA 2008) (holding trial court erred by denying motion to dismiss bad faith claim because there had not yet been a determination that the insurer breached the contract or an ascertainment of damages for the alleged breach). The rationale behind the rule is that, if there is no contractual breach by the insurer, the insurer cannot be liable for extra-contractual damages. *See Hartford Ins. Co. v. Mainstream Constr. Group*, 864 So2d 1270, 1272-73 (Fla. 5th DCA 2004). This is because, under Florida law, the duty of good faith is a contractual duty (now codified by statute in a first-

party context), and a claim for extra-contractual damages must necessarily derive from a breach of the contract. *See Allstate Ins. Co. v Regar*, 942 So. 2d 969, 972 (Fla. 2d DCA 2006); *See also American Vehicle Ins. Co. v. Goheagan*, 35 So. 3d 1001, (Fla. 4th DCA 2010) (in Florida, a bad faith claim is *ex contractu* and the cause of action is one for breach of a contractual obligation of good faith). Thus, absent a breach of the contract by the insurer, there can be no liability for bad faith. *See North Pointe v. Tomas*; *Hartford v. Mainstream*; *cf. Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985) (insurer doing no more than asserting its legal rights under the insurance contract, even when done in reckless disregard for a potential tragedy that occurred, gives rise to no cause of action because the insurer's actions are "privileged under the circumstances").

TIBBETTS does not seek benefits under the policy, but rather seeks to skip this prerequisite and seek extra-contractual (bad faith) damages. As TIBBETTS does not seek benefits, nor can it ever seek benefits under its own workers' compensation insurance policy, it can never prove breach of contract and Count One should therefore be dismissed.

### ii.  Florida prohibits Bad Faith Claims Against Workers Compensation Carriers

Florida law does not allow a plaintiff to sue a workers' compensation insurer for bad faith. *Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 91 n.3, 93 (Fla. 2005) (*citing* Fla. Stat. 440.11(4)); *Bowen v. Aetna Life and Casualty Company*, 512 So.2d 248 (Fla. 3d DCA 1987); *see also* Fla. Stat. 440.11 (2019). Accordingly, even if TIBBETTS could seek benefits under the insurance policy, its recovery would be limited to those contractual benefits and nothing more. The damages sought are prohibited by Florida law.

### iii.  As TIBBETTS does not seek benefits under the Workers Compensation Policy, it cannot obtain a judgment for breach of that policy. As a result, TIBBETTS can never satisfy this prerequisite to a first-party bad faith claim.

It is well-settled that a bad faith, or extra-contractual, suit cannot stand until a carrier has been found liable for a breach of the insurance policy[4].  Under Florida law, one may sue one's own insurer for bad faith (known as a first-party lawsuit) only in strict compliance with Florida's Civil Remedy Statute. §624.155, Fla. Stat. *See, e.g., Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1328, 1331 (M.D. Fla. 1998); *Talat Enterprises, Inc. v. Aetna Life & Cas.*, 952 F.Supp. 773 (M.D. Fla. 1996), *certified question accepted*, 728 So. 2d 205 (Fla. 1998) and *certified question answered*, 753 So. 2d 1278 (Fla. 2000) and *aff'd*, 217 F.3d 1318 (11th Cir. 2000). TIBBETTS' purported action against AMERISURE must be construed as a statutory action, as there is no recognized common law right to such an action under Florida law. *See, e.g., Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267 (11th Cir. 2009); *Clohessy*, 32 F.Supp.2d at 1331; *Talat Enterprises, Inc.*, 952 F.Supp. 773; *McLeod v. Continental Ins. Co.*, 591 So.2d 621 (Fla. 1992). The conditions precedent under §624.155 must be strictly construed, as § 624.155 is in derogation of the common law. *Nowak v. Lexington Ins. Co.*, 464 F.Supp.2d 1248 (S.D. Fla. 2006); *Talat Enterprises, Inc.*,753 So.2d at 1283; *Time Ins. Co., Inc. v. Burger*, 712 So.2d 389, 393 (Fla. 1998).  Accordingly, we next address the conditions precedent to a first-party bad faith suit.

### iv.  TIBBETTS failed to comply with Florida's Civil Remedy Statute, and can never do so.

As a condition precedent to bringing a statutory civil action against an insurer, the Department and the insurer must have been given 60 days written notice of the violation (a "Civil

---

[4] *Vest v. Traveler's Ins. Co.*, 753 So.2d 1270 (Fla. 2000); *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289 (Fla. 1991); *see also Imhof v. Nationwide Mut. Ins. Co.*, 643 So.2d 617 (Fla. 1994). In *Vest*, the Florida Supreme Court reaffirmed *Blanchard* and held "that *Blanchard* is properly read to mean that the 'determination of the existence of liability... and the extent of the [insured's] damages are elements of a cause of action for bad faith." 753 So. 2d at 1275. The *Vest* Court went on to hold that a claim under Section 624.155, Florida Statutes, "is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract" and "[s]uch a claim should be dismissed as premature" until such a final determination has been made. *Id.* at 1276.

Remedy Notice"). §624.155(3)(a), Fla. Stat. (2018). As the requirements of §624.155 are to be strictly construed, the failure to file a Civil Remedy Notice pursuant to the same is fatal to TIBBETTS' claim against AMERISURE in this action. *Talat Enterprises, Inc.*, 753 So. 2d at 1283 ("We find that the requirements of written notice to the Department of Insurance and the insurer are conditions precedent to bringing an action under subdivision (1)(a) or (b)"). *See also Heritage Corp. of South Florida v. National Union Fire Ins. Co. of Pittsburgh, PA*, 580 F.Supp.2d 1294 (S.D. Fla. 2008), *aff'd*, 361 Fed. Appx. 986 (11th Cir. 2010); *Clohessy*, 32 F.Supp.2d 1328 (M.D. Fla. 1998).

Moreover, because TIBBETTS is not suing for insurance benefits and is barred from bringing a bad faith suit against its workers' compensation carrier, TIBBETTS can never satisfy this prerequisite. The required Civil Remedy Notice, which is submitted exclusively online[5], does not afford an insured to seek prohibited damages against a workers compensation insurer. No amendment or abatement of the action can cure this fatal defect in TIBBETTS' claim.

### v.   Florida Does Not Recognize Claims for Paying Claims

Bad Faith claims in Florida are limited to instances when an insurer *fails to pay* a claim and exposes an insured to a judgment in excess of policy limits. *See Shuster v. South Broward Hospital District Physicians Professional Liability Insurance Trust*, 591 So.2d 174, 176 (Fla. 1992). Florida does not acknowledge claims for instances when an insurer settles claims within policy limits. *See id.* This is because an insurer such as AMERISURE has the "…right and duty to defend…any claim, proceeding or suit against [*the insured*] for benefits payable by this

---

[5] Florida's Department of Financial Services requires all Civil Remedy Notices to be submitted at https://www.myfloridacfo.com/Division/Consumers/civilremedy.htm.

insurance…" and has the "…right to investigate and settle these claims, proceedings or suits."
[D.E. 10-1 at p. 8] [6]. Thus, whether to settle claims is solely within AMERISURE's purview.

Florida's Supreme Court held that an insured cannot seek extra-contractual damages when
the insurer settles a claim within the policy limits, exposing the insured to no excess liability, even
though the insured claims that, as a result of the settlement, he is unable to obtain insurance.
*Shuster*, 591 So. 2d at 176. Florida's Supreme Court emphasized that the fiduciary aspect of the
insurer-insured relationship is determined by the scope of the contractual undertaking. *Id*. As such,
the Court held that the "right and duty to defend" clause found in the insurance policy was properly
construed to provide a broad duty to defend and a discretionary duty to settle. *Id.* The Court further
defined good faith in terms of the intent and expectations of the parties entering into the insurance
contract and noted that the insurance policy permitted the insurer to settle and investigate claims
as it deemed expedient. *Id.* at 178.

Specific to the workers compensation arena, Florida's statutory scheme is designed to
provide workers with an expedited procedure to secure benefits following workplace injuries. FLA.
STAT. § 440.015 (2018)("It is the intent of the Legislature that the Workers' Compensation Law
be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to
an injured worker...."). In exchange, employers and employees have renounced common law rights
and defenses: "The workers' compensation system in Florida is based on a mutual renunciation of
common-law rights and defenses by employers and employees alike." *Id*. The closely regulated
and uniform workers compensation policies afford the right to investigate and settle claims to the

---

[6] Part One (C) of the Policy, cited by TIBBETTS', specifically states:

**C. We Will Defend**
>    We have the right and duty to defend at our expense any claim, proceeding or suit
>    against you for benefits payable by this insurance. We have the right to investigate
>    and settle these claims, proceedings or suits.
>    We have no duty to defend a claim, proceeding or suit that is not covered by this
>    insurance.

insurer, and employers and employees are afforded no statutory rights to challenge the insurer's decision. Therefore, based on Florida's statutory scheme and the logic of the *Shuster* decision, TIBBETTS' has no valid claim for Breach of Contract against AMERISURE and Count One of its Amended Complaint should be dismissed with prejudice.

### C. Negligent Misrepresentation

TIBBETTS' negligent misrepresentation claim also fails because Florida does not recognize a cause of action against an insurer for extra-contractual advertisements. TIBBETTS' claims that AMERISURE represents it is "an advocate for the containment of loss for its workers' compensations insureds" and it "helps fight workers' compensation fraud through a comprehensive program and highly trained and experienced team of investigators…" [D.E. 10 at ¶122]. The Amended Complaint further alleges that AMERISURE made "these representations negligently believing that it had no obligation to conduct good faith investigations into Tibbetts' employees' workers' compensation claims…" [D.E. 10 at ¶142]. Florida does not recognize a cause of action against an insurer for exercising its contractual right to settle a claim.[7]

Florida's Insurance Code, (Chapters 624-632, 634, 635, 636, 641, 642, 648, and 651), heavily regulates insurance companies and their conduct, authorizing the Florida Department of Financial Services to seek both civil and criminal sanctions for violations of the code. *See* FLA. STAT. §§ 624.307, 624.310. However, the code provides no private right of enforcement for alleged violations, and enforcement rests solely with the Department of Financial Services. While the code also provides remedies for insureds aggrieved by "misrepresentations and false advertising

---

[7] While counsel has located no Florida caselaw directly on point, New York has recognized that the manner in which an insurer investigates and decides whether to pay or fight a workers' compensation claim is "…a matter of business judgment within the discretion of the management" of the insurer. *Insurance Company of Greater New York v. Glen Haven Residential Health Care Facility, Inc.*, 253 A.D. 378, 379 (N.Y. App. Div. 1998).

of insurance policies", TIBBETTS cannot bring such an extra-contractual cause for the reasons stated above. *See* Fla. Stat. §§ 624.155, 626.9541. But

## **CONCLUSION**

TIBBETTS sues AMERISURE for paying claims on its behalf. TIBBETTS cannot comply with multiple conditions precedent in seeking extra-contractual damages, and for the reasons set forth cannot state a claim for breach of contract, breach of fiduciary duty or breach of implied covenant of good faith and fair dealing or for negligent misrepresentation. TIBBETTS claims are barred by the express terms of the exclusivity provision of Florida's Workers' Compensation Statute. Florida has not recognized an insured's cause of action to recover the increase in premiums from an insurer who paid workers' compensation claims for the insured. Accordingly, because no amendment could correct the fatal deficiencies still contained within each Count, the Court should dismiss TIBBETTS' Amended Complaint against AMERISURE with prejudice and grant any other relief the court deems appropriate.

Respectfully Submitted: July 9, 2019.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2019, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.  I further certify that the foregoing document is being served this day to all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/Ryan S. Stratton*_____
Bruce A. Aebel, Esq.
Florida Bar No.: 0066435
Email:  service-baebel@bankerlopez.com
Ryan S. Stratton, Esq.
Florida Bar No.:  0124879
Email:  service-rstratton@bankerlopez.com
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL  33602
(813) 221-1500
Fax No: (813) 222-3066
*Attorneys for Defendants,*
*Amerisure Insurance Company*